PICKETT, Judge.
This is an appeal from a judgment on a rule ranking the claims of various creditors of the defendant, Paul L. Pegues. The trial court ranked the claims of the creditors in the following order:
1. The Department of Finance of the City of Baton Rouge;
2. John W. McQuaid ;
3. Southern Import Sales, Inc.;
4. Harold E. Wells, et al.
Harold E. Wells, individually, and on behalf of his minor children, Tammy Lynn Wells and Valerie Wells, has appealed. *279 Mr. Wells complains of the following errors :
“The trial judge erred when he declared the the “Notice of Lis Pendens” purporting to note an attachment, Suit Number 159,087 on the docket of the 19th Judicial District Court, to be effective as against third parties.
“The trial judge erred in holding that an alleged privilege on a specific immovable shifted to the movable proceeds of another attaching creditor who executed on its privilege as against the immovable property attached.”
The Citizens Savings and Loan Association obtained a judgment against Paul L. Pegues on February 22, 1973, for the sum of $34,559.76, with interest, attorney’s fees and costs, with recognition of plaintiff’s vendor’s lien and privilege on certain im-mobable property described in the judgment, in the matter entitled, “Citizens Savings and Loan Association vs. Paul L. Pegues”, Number 161,165 on the docket of the Nineteenth Judicial District Court. The Citizens Savings and Loan Association caused a writ of fieri facias to issue in execution of its judgment and the Sheriff of East Baton Rouge Parish seized the property described in its judgment and sold it on May 10, 1973, for the sum of $44,-500.00. After paying Citizens Savings and Loan Association the amount of its judgment, and costs, there remained in the hands of the sheriff the sum of $2,151.36. The Sheriff was granted permission to deposit the residual funds in the Registry of the Court. The pursuit of these funds by the creditors of Paul L. Pegues generated the issues now before us.
A Federal Tax Lien for the sum of $911.01 was paid from the funds on deposit in the Registry of the Court.
Southern Import Sales, Inc., filed a rule on September 5, 1973, to have the claims of the various creditors of Paul L. Pegues ranked. The trial court ranked the claims as above set forth. The judgment of John McQuaid for the sum of $54.20, and the Tax Assessment of the City of Baton Rouge for the sum of $146.74 clearly have priority, and there is no dispute as to these claims. Therefore, the contoversy is between Southern Import Sales, Inc. (South•ern) and Harold E. Wells, in his aforesaid capacity (Wells).
Southern’s claim is based on an attachment of the same property of Paul L. Pegues that was subsequently seized and sold to satisfy the judgment of the Citizens Savings and Loan Association. The property was attached on October 18, 1972, under a writ of attachment sued out by Southern. A Notice of Lis Pen-dens, giving notice of the attachment, was filed on October 18, 1972, for recording in the Conveyance and Mortgage Records of East Baton Rouge Parish. The defendants Paul L. Pegues, and his wife, Dorothy H. Pegues, answered Southern’s suit with a general denial of liability, and reconvened for damages, alleging wrongful seizure of their property under the writ of attachment. The defendants’ appearance in the suit subjected them to the jurisdiction of the court. But the defendants made no further appearance in the case; and a personal judgment was rendered in favor of Southern and against the defendants, Paul L. Pegues and Doris H. Pegues, on April 17, 1973, for the sum of $6,460.26, with interest and costs, and maintaining Southern’s privilege on the property attached. This judgment was filed in the Mortgage Records of East Baton Rouge Parish, on April 18, 1973.
Wells’ claim is based on a judgment rendered and signed on November 9, 1972, for the sum of $1,100.00, with interest and costs, in the cause entitled, “Harold E. Wells, Individually, and for and on behalf of and for the use and benefit of his minor daughters, Tammy Lynn Wells, and Valerie Wells vs. Lumbermen’s Mutual Casualty Insurance Company, et al.” This judgment was filed in the Mortgage Records of East Baton Rouge Parish, on November 9, 1972. *280 The facts as above outlined are not disputed. Wells- contends that his judgment, having been filed in the Mortgage Records of East Baton Rouge Parish, on November 9, 1972, has priority over Southern’s judgment which was not filed until April 18, 1973. In support of his contention, he relies on LSA-C.C. Article 3329, which provides :
“Among creditors, the mortgage, whether conventional, legal or judicial, has force only from the time of recording it in the manner hereafter directed.”
Furthermore, Wells contends that the Notice of Lis Pendens filed by Southern on October 18, 1972, affected only the property described therein, and does not grant a general preference or privilege on other property not described in the Notice of Lis Pendens.
Southern contends that its privilege on the immovables seized under its writ of attachment dates back to the time of the attachment; and that the privilege is in no way contingent on the validity or existence of the Notice of Lis Pendens filed by it. For the validity of its privilege, Southern relies on the provisions of LSA-C.C.P. Art. 3511, which reads as follows:
“A creditor who seizes property under a writ of attachment or of sequestration acquires a privilege from the time of the seizure if judgment is rendered maintaining the attachment or sequestration.”
Comment (b) under the above cited article states:
“This article codifies the jurisprudence to the effect that the judgment maintaining the writ is retroactive to the date of seizure. Board of Supervisors v. Hart, 210 La. 78, 26 So.2d 361 (1946).”
In the Hart case, supra, the Supreme Court stated:
“Under the law of Louisiana, the lien and privilege resulting from an attachment when recognized by judgment, relates back to the date of the seizure and is superior to or primes any intervening mortgages, liens, encumbrances, pledges or purchases.”
In the same case the Supreme Court, also, said:
“In view of the Code articles and jurisprudence to which we have hereinabove referred, it can not be disputed that, under the law of this State, an attachment gives the attaching creditor rights which are superior to mortgages, privileges and liens arising subsequent to the attachment but prior to the judgment recognizing the attachment.”
Southern did not execute its judgment and have the property sold. Counsel for Wells now contends that, because it did not execute its judgment, but permitted the property attached to be sold by another creditor, it had lost its privilege, which extended only to the particular property seized under its writ of attachment. Counsel argues that when the specific property seized under the writ of attachment goes out from under the control of the attaching creditor, the privilege acquired by the attachment ceases. Counsel for Wells, also, argues that if the property attached is sold, except in execution of the judgment by the attaching creditor, the privilege on the property attached does not pass to the proceeds of the sale.
In the case of In re Bryce Cash Store, Inc., 12 La.App. 365, 124 So. 544, some of the issues presented to the court were quite analogous to the issues raised by counsel for Wells in the instant case. In the Bryce Cash Store case a receiver was appointed, and upon application of the receiver, the court ordered him to sell at private sale all of the assets of the concern to pay the debts of the corporation. The assets of the corporation were sold, and the receiver filed his account, in which he listed separately the privileged and ordinary claims filed with him. A claim of the Baker Grocery Company for $155.66 was filed as a privileged claim. Other creditors, who claimed no privilege, opposed the *281 claim, contending the Baker Grocery Company had no privilege. Previous to the appointment of a receiver, the Baker Grocery Company had sued Bryce Cash Store and caused the property of its debtor to be attached. The Baker Grocery Company was awarded a judgment, “which judgment maintained the attachment and specifically recognized its privilege, as allowed by law to attaching creditors on the property attached, . . .” The Baker Grocery Company did not excute its judgment and the opponents in that case, as has counsel for Wells in the instant case, contended that it had rio privilege because it did not execute its judgment. In that case, the court held that the Baker Grocery Company did not lose its privilege when the property attached was turned over to the receiver, and in so holding, said:
It is conceded that there was m this case an act of seizure, which was declared by the court to he valid and was sustained. The Baker Grocery Company was, therefore, entitled to a preference over the other less diligent creditors. The property of the debtor was attached before the receiver was appointed, and the privilege, when recognized by the court, dated back to the service of the writ. Now, was this seizure and the privilege conferred by it divested when the receiver was appointed and took over the property? The answer is ‘No’.”
With reference to the privilege on the proceeds of the sale, the court, then, said:
“The property was sold by the receiver at private sale by order of the court. The privileges on the property were shifted to the proceeds, and the claims must be paid according to their rank. In re Connell Iron Works, 138 La. 702, 70 So. 617.”
We conclude that it is the law and established jurisprudence of this State that when property has been attached according to law and carried to judgment which specifically maintains the writ of attachment and recognizes the privilege, which dates back to the seizure of the property, execution on such judgment is unnecessary to preserve the privilege. Furthermore, the sale of the attached property by the Sheriff of East Baton Rouge Parish pursuant to a writ of fieri facias issued in execution of the judgment of Citizens Savings and Loan Association, a superior ranking mortgage holder, did not destroy Southern’s privilege on the residual proceeds of the sale. The privilege on the property attached was shifted to the residual proceeds of the sale of that property.
For the foregoing assigned reasons, the judgment appealed from is affirmed. Cost of this appeal to be paid by appellant.
Affirmed.