464 So.2d 406 (1985)
Marigrace TOPOLE, et al.
v.
Davis EIDSON, Jr., et al.
No. CA 84 0080.
Court of Appeal of Louisiana, First Circuit.
February 26, 1985.
*407 Carolyn Pratt Perry, Baton Rouge, for Davis Eidson, Jr. and Sr.
Joseph McMahon, New Orleans, for Sentry Ins. and Davis Eidson Jr. and Sr.
L. Jay McCreary, Slidell, for plaintiff-first appellant.
Dan Atkinson, Baton Rouge, for Great American Ins.
Edward P. Lobman, Metairie, for State Farm.
G. Brice Jones, Slidell, for Davis Eidson.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
This is a suit for damages in tort arising from an accidental shooting with a pistol. The mother, Marigrace Topole, of the minor, Anthony T. Parks, injured in the shooting, filed suit individually and on behalf of the minor against the following: (1) Russell Hardy, the minor who was holding the pistol when it discharged; (2) Ralph Hardy, Russell Hardy's father; (3) State Farm Fire and Casualty Company (SF Fire), Ralph Hardy's homeowner's insurer; (4) State Farm Mutual Automobile Insurance Company (SF Automobile), as automobile liability insurer of Ralph Hardy for two automobiles and as uninsured motorist insurer of Anthony T. Parks through Donald Topole, Marigrace Topole's husband; (5) Davis Eidson, Sr., as owner of the pistol that discharged and owner of the pickup truck in which Russell Hardy was standing when the pistol discharged; (6) Sentry Insurance Company (Sentry), as homeowner's insurer of Davis Eidson, Sr.; (7) Great American Insurance Company (Great American), as automobile liability insurer of Davis Eidson, Sr.'s pickup truck; and (8) Davis Eidson, Jr., an adult, who brought the pistol in the pickup truck. The defendants filed various third party demands against each other. SF Automobile filed a motion for summary judgment contending the two policies issued to Ralph Hardy and the policy issued to Donald Topole did not provide coverage. Great American also filed a motion for summary judgment contending the policy issued to Davis Eidson, Sr. (in the trade name of Dave's Plumbing) did not provide coverage. The district court granted these summary judgments and dismissed the main demand and all third party demands against SF Automobile and Great American with prejudice, each party to bear its own costs.[1] Marigrace Topole suspensively appealed this judgment and Davis Eidson, Sr., Davis Eidson, Jr. and Sentry (as third party plaintiffs) devolutively appealed.

FACTS
On October 4, 1981, Anthony T. Parks, Davis Eidson, Jr., Pat O'Reilly and Russell Hardy were camping in the Three Rivers camping area in Concordia Parish, Louisiana. They traveled to the camping area from Slidell, Louisiana, in a pickup truck owned by Davis Eidson, Sr. Davis Eidson, Jr. brought a .44 magnum pistol owned by Davis Eidson, Sr. on the trip. While the group was dismantling their camp preparatory to leaving the camping area, Russell Hardy was standing in the back of the truck holding the pistol when it accidentally fired and wounded Parks.
*408 In his deposition (attached to the motions for summary judgment), Russell Hardy described the incident as follows:
Q. Now, then, tell me exactly what you did once you started to break camp.
A. We was loading up the truck and that. And I was standing on the back of the truck. I was going to shoot the gun. And I took it out the holster, out of the thing he had it in. I put a bullet in. And I was standing back on the left side of the truck and I was aiming to the ground. And I was pulling the trigger. Because I knew where I put it in, it'd click so many times before it went off, and I was clicking it. I was going to shoot it. Then I turnedI was going to shoot it. I turned around. And I don't knowdon't remember where it hadit went off. And Tony was saying he was hit, you know. Dave took the gun out of my hand ...
Q. Let's back up to the extent of where was the gun when you picked it up?
A. It was in the holster on Dave's toolbox in the back of his truck.
* * * * * *
Q. And where were the shells? Were they in the toolbox or were they just sitting out?
A. No. I believe they were sitting on top, too. I don't really remember where they were.
Q. Then you picked up one of the shells and you put it in here?
A. Yes, ma'am.
Q. And at this time you were standing on the bed of the truck?
A. Standing in the back. Yes, ma'am.
Q. Then what did you do?
A. I pointed it towards the ground and I was clicking it.
Q. Were you still in the bed of the truck?
A. Yes, ma'am. I was standing in the bed of the truck the whole time.
* * * * * *
Q. And then I want you to think back and I know this is hard for youbut think back very carefully and explain to me what happened next.
A. I decided not to shoot it.
Q. You decided not to shoot the gun?
A. Yes, ma'am. So I was turning with itI don't know really what happenedI pulled the trigger or I just don't remember. It went off. And I was just standing there with it in my hand and Tony said he was hit. And Dave took the gun out of my hand. I just stood there. And then we got down and we picked up Tony and put him in the truck. And that's when we brought him up to the place.
In his affidavit in opposition to the motions for summary judgment, Parks stated:
On the morning of October 4, 1981, affiant was entering the pickup truck owned by Davis Eidson, Sr., and at the same time, Russell Hardy was standing in the bed of that pickup truck. Immediately prior to that moment, the camp site was being dismantled, and further some of the items brought on the camping trip were in the process of being loaded or had been loaded into the rear of the pickup truck.
At that same moment, Russell Hardy, was standing in the bed of the pickup truck and was handling a 44 magnum revolver owned by Davis Eidson, Sr. It is at that point in time, when the revolver discharged, striking Anthony Thomas Parks and severely causing him injury.

SUMMARY JUDGMENT ON INSURANCE COVERAGE
Appellants contend the district court erred because genuine issues of material fact existed concerning insurance coverage. In particular, they contend there was coverage because when the accident occurred the group was loading the truck, Parks was entering the truck and Hardy was standing in (using) the truck.
*409 The law applicable to summary judgments is set forth in Massingale v. Sibley, 449 So.2d 98, 100 (La.App. 1st Cir.1984), as follows:
The law is well settled that a motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966; Stallings v. W.H. Kennedy & Son, Inc., 332 So.2d 787 (La. 1976). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976). The burden of showing that there is not a genuine issue of material fact in dispute is upon the mover for summary judgment. Any doubt is resolved against the granting of a summary judgment and in favor of a trial on the merits to resolve disputed facts. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963).
See also Quintana Petroleum Corporation v. Alpha Investments Corporation, 435 So.2d 1092 (La.App. 1st Cir.1983). If the supporting documents presented by a party moving for a summary judgment are sufficient to resolve all genuine issues of fact, the burden shifts to the opposing party to present evidence showing that material facts are still at issue. At this point, the opposing party may no longer rest on the allegations and denials contained in his pleadings. La.C.C.P. art. 967; Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Broussard v. Henry, 423 So.2d 67 (La.App. 1st Cir.1982).
Under the automobile liability policies issued to Ralph Hardy, SF Automobile was obligated to pay on behalf of its insured all sums which the insured shall become legally obligated to pay as damages because of "bodily injury ... arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile." (Emphasis added). The automobile liability policy issued by Great American to Dave's Plumbing (Davis Eidson, Sr.) contained similar language.[2] Under the uninsured motorist provisions of the automobile liability policy issued to Donald Topole, SF Automobile was obligated to pay all sums which the insured is legally entitled to recover as damages from the owner of an uninsured and/or underinsured automobile because of bodily injuries sustained by the insured "caused by an accident and arising out of the ownership, maintenance or use of an uninsured automobile."[3] (Emphasis added).
The trial judge, in his reasons for judgment, correctly posed the issue to be resolved as follows:
Essentially the issue presented to the Court is whether an accidental shot fired from a revolver picked up by a boy while standing in the flatbed of a pickup allegedly to load camping gear preparatory to returning home constituted a use of the vehicle for purposes of coverage under the automobile insurance policies provided by movers to some of the defendants.
In Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080, 1087 (La.1982), the Louisiana Supreme Court held the "arising-out-of-use" provision requires the court to answer two separate questions:
(1) was the conduct of the insured of which the plaintiff complains a legal cause of the injury?

*410 (2) was it a use of the automobile?
The automobile use and legal cause questions must be answered separately; the duty-risk analysis is used to decide the legal cause question. Carter, 423 So.2d at 1087. It has been suggested the court need not reach the automobile use question unless the legal cause question could be answered affirmatively, and coverage exists only if both questions are answered affirmatively. McKenzie, Developments in the Law 1982-1983: Insurance Law, 44 La.L.Rev. 365 (1983). It is unnecessary to answer the legal cause question herein because this matter can be resolved by answering the automobile use question.[4]
Although the boys may have been using the vehicle (by standing in it, loading it or entering it), the accident was not caused by that use. The accident was caused by the discharging of the pistol, which was not related to the use of the vehicle. The injury-causing activity (Russell Hardy's careless handling of a loaded pistol) is not an activity flowing from the "use" of the vehicle. As noted by the trial judge, "[n]o reasonable minds could conclude that the discharge of the pistol was in any way causally connected to any alleged loading of the truck." Applying a common sense approach, Russell Hardy's discharge of the pistol was not a reasonable and natural consequence of the use of the vehicle, within the contemplation of the parties to the insurance contracts. See, Tolleson v. State Farm Fire and Casualty Co., 449 So.2d 105 (La.App. 1st Cir.1984), writ denied, 450 So.2d 968 (La.1984).
The district court correctly found there was no genuine issue of material fact concerning the "use" of the vehicle and, as a matter of law, properly granted the summary judgments. Cf. Dupuy v. Gonday, 450 So.2d 1014 (La.App. 1st Cir.1984).

DECREE
For the foregoing reasons, the judgment of the district court is affirmed at the appellants' costs.
AFFIRMED.
NOTES
[1] The plaintiffs settled their claims against Ralph Hardy, Russell Hardy and SF Fire for $95,000. The case went to trial by jury against Davis Eidson, Sr., Davis Eidson, Jr. and Sentry, and the jury rendered verdicts in favor of those defendants.
[2] The policy provides Great American "will pay all sums the insured legally must pay as damages because of bodily injury ... caused by an accident and resulting from the ownership, maintenance or use of a covered auto."
[3] Both SF Automobile and Great American acknowledge that loading and unloading of a vehicle constitute a "use" for purposes of coverage under their policies.
[4] However, we note the duty of Russell Hardy to use extraordinary care in handling the pistol to protect those around him from being harmed exists whether he handles the pistol in the truck or out of it. The specific duty breached exists independently from the vehicle. Since this duty exists independently from the use of the truck, liability does not arise out of the truck use even though the duty could have been performed while using the truck. McKenzie, supra, at 368-369.