HIGHTOWER, Judge.
This action arises from injuries sustained when a teenage girl, seated in a vehicle, struck the bottom of a bottle and fractured two teeth of a companion, then drinking from the container. The owner of the automobile and his insurer appeal from a judgment in favor of plaintiffs. We affirm in part and reverse in part.
POSTURE OF CASE
Two 13-year-old girls, Donna Willis and Melanie Laughry, departed on a date with Bobby Massey, Jr. and David Tucker. After dining at a fast-food restaurant, the foursome traveled in Massey’s pickup to a *436 secluded area near Cross Lake in Caddo Parish. There, the boys began to drink beer and provided wine coolers for the girls.
Eventually, the males exited and moved toward the rear of the truck to talk. The two girls remained in the cab of the vehicle, where they each imbibed from separate bottles of the wine beverage. At some point, a. disagreement ensued between the females concerning who would continue the date with which boy. During the argument, at the very moment that Donna drank from her bottle, Melanie struck the bottom of the container, causing it to forcefully hit and fracture two of Donna’s front teeth.
Donna’s parents brought suit against the other girl’s mother. Later, plaintiffs added the owner of the truck, Massey, as a defendant, along with his insurer.
In a written opinion following trial, the Shreveport City Court termed Melanie’s act as “playful or inadvertent,” and awarded plaintiffs general damages of $5,000 against all three defendants. Recovery of certain expenses, plus penalties and attorney’s fees, also arose under the medical payments section of the policy at hand. Thus, in effect, the trial judge found both liability and medical payments coverage provided by the insurer. On appeal, error is assigned as to both determinations.
DISCUSSION

Liability Coverage

Part A of the insurance policy, in providing liability coverage, states that the insurer will pay damages for bodily injury “for which any covered person becomes legally responsible because of an auto accident.” (Emphasis added.) “Covered person” is then defined in that section to include “[a]ny person using [the] covered auto." (Emphasis added.) Thus, in determining coverage under the present circumstances, three inquiries are appropriate. First, whose conduct is the legal cause of the injury? Second, did the specific breach of duty flow from use of the automobile? Third, did that breach of duty result in an auto accident? Cf. Carter v. City Parish Gov. of E. Baton Rouge, 423 So.2d 1080 (La.1982). See also W. McKenzie and H. Johnson, 15 Louisiana Civil Law Treatise, § 65 (1986), discussing such an approach.
The first inquiry quickly focuses on Melanie’s conduct.[1] We must determine (a) if her behavior constituted the cause-in-fact of the harm, and (b) whether she had a duty to protect against the injury encountered. Carter, supra. Clearly, her act was the cause-in-fact of the injury suffered. But for Melanie striking the bottom of the wine cooler bottle, this injury would not have occurred. Her duty not to engage in that conduct encompassed the specific risk of harm, the injury, which resulted from the breach involved. Thus, under the duty-risk analysis, her unreasonable conduct comprised the legal cause of Donna’s injury.
Next, our analysis determines if the breach of the duty not to strike the bottle flowed from use of the automobile. Clearly, the answer is negative. The specific legal duty that Melanie owed to Donna existed independently of use of the automobile. We cannot reason that a transformation of that duty somehow occurred upon the girls entering the vehicle. Cf. Kessler v. Amica Mut. Ins. Co., 573 So.2d 476 (La.1991), concluding that an unidentified motorist’s breach of duty did not arise out of use of his vehicle, although he actually drove the auto during the incident in question. See also Topole v. Eidson, 464 So.2d 406 (La.App. 1st Cir.1985), finding that the injury-causing activity did not flow from “use” of the vehicle in which the tortfeasor stood at the time of the accident.
Nor do we view the breach of the duty as resulting in an “auto accident,” a term more limited in scope than the general word, “accident,” utilized in the medical *437 payments section of the policy. Here, the truck was merely the situs of the accident. It played no significant role in the transpiring injury, which Melanie’s tortious act caused. Also, the incident before us is clearly distinguishable from occurrences such as shown in Bolton v. N. River Ins. Co., 102 So.2d 544 (La.App. 1st Cir.1958), when a passenger slammed the door of the automobile on another party’s hand.
For these reasons, inasmuch as the breach of duty by Melanie did not flow from use of the truck or result in an automobile accident, we conclude the trial court erred in finding liability coverage.

Medical Payments

Part B of the insurance policy, in according medical payments coverage, provides:
We will pay reasonable expenses incurred for necessary medical ... services because of bodily injury; (1) caused by accident; and (2) sustained by a covered person.... ‘Covered person’ as used in ths (sic) Part means; ... (2) Any ... person while occupying the covered auto.
Thus, such expenses are to be paid for injuries caused by an “accident” and sustained by a person “occupying” the vehicle. Simply stated, the med pay provisions constitute accident insurance for occupants of the vehicle.
It is undisputed that Donna suffered her injuries while occupying the truck. Furthermore, we disagree with the insurer’s assertion that an “accident” did not occur.
In a relatively early Louisiana decision concerning the meaning of “accident,” the late Justice (then Judge) Tate quoted with approval from Black’s Law Dictionary: “An accident within accident insurance policies is an event happening without any human agency, or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens.” Knight v. L.H. Bossier, Inc., 118 So.2d 700, 703 (La. App. 1st Cir.1960) (emphasis from original opinion). Later, in Redden v. Doe, 357 So.2d 632 (La.App. 1st Cir.1978), concerning uninsured motorist coverage, the court similarly observed that even intentionally inflicted injuries may result from an “accident,” when addressed from the victim’s standpoint. See also W. McKenzie and H. Johnson, supra, at § 184.
Third and Fourth Circuit decisions denied recovery of medical payments when an individual delivered repeated blows to the plaintiff’s body, in Mangum v. Weigel, 393 So.2d 871 (La.App. 4th Cir.1981), and where would-be robbers struck their victim about the head and face during a struggle, in Hartman v. Trinity Universal of Kansas, 551 So.2d 797 (La.App. 3d Cir.1989), writ denied, 556 So.2d 1264 (La.1990). Notwithstanding those two cases, “accident” has been adequately defined in a manner refuting the present insurer’s position.
The trial court, as we interpret its opinion, found that Melanie intended to strike the bottle but did not intend to cause the injuries. That finding is not manifestly wrong. See Rosell v. ESCO, 549 So.2d 840 (La.1989). In contradiction of the insurer’s argument, the evidence quite obviously fails to indicate that Melanie intended to hit the bottle with enough force to dislodge or damage two of Donna’s teeth. Clearly, neither girl expected the injuries that resulted. Thus, under the circumstances disclosed, we conclude that an “accident” transpired as contemplated within the medical payment section of the policy, and as distinguished from an “auto accident” required for liability coverage.

Penalties and Attorney’s Fees

LSA-R.S. 22:658 subjects an insurance company to certain penalties and attorney’s fees, if its refusal to pay a claim is “arbitrary, capricious, or without probable cause.” In reference to medical payments, the appellant-insurer maintains in brief that it did not believe an obligation to pay existed because the injuries resulted from an intentional tort and therefore did not involve an “accident.” Of course, as discussed above, we have resolved that issue adversely to the carrier.
We further deem the jurisprudence, albeit sparse, sufficiently clear to guide an insurance company to satisfy the present *438 demand for medical payments. Even a superficial examination of the incident immediately suggests that Donna’s injuries did not result by design but, rather, through the unintended consequence of a momentary prank or act of horseplay. Nor did the insurer call any witnesses at trial in an effort to support its characterization of events.
In short, the trial judge did not err in assessing penalties against the appellant-insurer for refusing medical payments.
CONCLUSION
Judgment against Bobby Massey, Jr., as well as the award of $5,000 in general damages against the insurer, are reversed. Conversely, we affirm the award of $2,000 for medical payments, in addition to penalties and attorney’s fees. Costs of appeal are assessed one-half to the insurer and one-half to plaintiffs.
AFFIRMED IN PART; REVERSED IN PART.

. Before addressing whether the policy extended coverage to other persons, the trial court correctly concluded that "the owner of the truck has no legal liability ... to Willis ... because of ... neglect or [any] other tortious act.” Thus, in casting Bobby Massey, Jr. for damages, the judgment reflects obvious error.