445 P.2d 474

Stanley BRENNER, Appellant,

v.

AETNA INSURANCE COMPANY, a corporation; and Mission Insurance Company, a corporation, Appellees.

No. 2 CA–CIV 530.

Court of Appeals of Arizona.

Sept. 26, 1968.

Rehearing Denied Oct. 24, 1968.

Review Denied March 25, 1969.

Joseph H. Soble, John G. Stompoly, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond, by James L. Richmond, Tucson, for appellee Aetna Ins. Co.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by D. Thompson Slutes, Tucson, for appellee Mission Ins. Co.

MOLLOY, Judge.

The appellant, Stanley Brenner, was accidentally shot by James Luzadder while both were riding as passengers in a motor vehicle owned by Luzadder. The question on appeal in this declaratory judgment action is whether either of two insurance companies has the duty to defend Luzadder in a damage suit commenced against him by Brenner.

The facts are simple and, insofar as critical, without dispute. Brenner, Luzadder and one Hardy went on a hunting and exploration trip over Labor Day weekend, 1966. The party journeyed north and eastward from Tucson in Luzadder's Ford Bronco vehicle until Labor Day Monday, when it became time to start returning to Tucson. They stopped for lunch, at either Safford or Willcox, after which, when the trip home resumed, Hardy was driving, Luzadder was sitting in the right front passenger seat, and Brenner was sitting in the rear.

The trio had been using guns during the weekend, apparently sometimes with little regard for elementary safety measures. Luzadder states that when the party thus embarked on the last leg of the return trip to Tucson, his .45 caliber pistol was loaded and in the front seat with him. Shortly

thereafter, Luzadder was conscious of unloading the pistol, but somehow, while he was " * * * shooting the breeze * * " with the others, he unconsciously accomplished its reloading. Luzadder continued to handle and toy with the gun while he was sitting sideways in his bucket seat and talking with the others until, according to his testimony, it accidentally discharged at a time when it had become pointed in the direction of Brenner. While Luzadder is unclear as to precisely how the gun went off, his testimony would indicate that the barrel was resting in the crook of his left arm, and that his right hand was in contact with the other end of the gun. It does not appear that the gun was in contact with any part of the vehicle. Luzadder states positively that no motion of the vehicle or contact by him with it caused the gun to go off.

Brenner's version of the incident is in most respects essentially similar to Luzadder's, except that Brenner testifies that immediately prior to the gun's discharging, Luzadder pointed the gun at him and said "bang" in a joking manner. The bullet which was fired severely wounded Brenner, and he instituted suit against Luzadder in the superior court.

At the time of the accident, Luzadder was an insured under an automobile liability policy issued by the appellee Mission Insurance Company, and under a homeowners policy issued by the appellee Aetna Insurance Company.

Under the terms of the automobile liability policy, Mission is required to defend claims against Luzadder and to provide coverage for damages for bodily injuries:

"* * * sustained by any person, caused by accident arising out of the ownership, maintenance, or use of the [insured] automobile."

· The homeowners policy issued by Aetna requires it to defend against claims for damages for which there is coverage under the policy, and provides "personal liability" coverage in the following terms:

## "PROVISIONS APPLICABLE TO SECTION II

"THIS COMPANY AGREES WITH THE NAMED INSURED:

### "INSURING AGREEMENTS

"1. COVERAGE E—PERSONAL LIABILITY:

"(a) Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury * * * and the Company shall defend any suit against the Insured alleging such bodily injury * * *"

The homeowners policy also contains the following exclusion which is applicable to its "personal liability" coverage:

### "SPECIAL EXCLUSIONS

"Section II of this Policy Does Not Apply:

\* \* \* \* \* \*

"(b) under Coverages E and F, to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles * * * while away from the premises or the ways immediately adjoining * * *"

After Brenner brought his action against Luzadder, the appellee Aetna instituted this declaratory judgment proceeding, joining Brenner, Luzadder, and Mission. The answer filed by Mission sought a determination that it, like Aetna, had no duty to defend or liability for any damages assessed against Luzadder. Answers filed by Brenner and Luzadder sought a judgment that coverage existed under one or both policies. After considering the depositions of Brenner and Luzadder, and the briefs and arguments of all parties, the trial judge ruled that, under the circumstances disclosed, neither policy afforded coverage and neither company had a duty to defend Luzadder. Brenner alone appeals.[1]

---

1. That Brenner is a proper party to the declaratory judgment action, see generally Connolly v. Great Basin Insurance Company, 6 Ariz.App. 280, 431 P.2d 921 (1967).

Brenner contends, in essence, that the above-quoted provisions in the two policies afford complementary coverage, depending basically upon whether a "use" of the automobile is involved, and that one or the other of the policies must necessarily afford coverage for Brenner's injuries. Aetna contends, for its part, that this position ignores slightly different wording and the "away from the premises" automotive exclusion in its homeowners policy. Mission relies upon authorities which hold that an injury, in order to be within the term "arising out of the * * * use" of a vehicle, must be causally related to such use, and asserts that no such causal relation is shown to exist in this case.

■ We cannot be concerned with a fine analysis of whether or not and to what extent the two policies provide complementary coverage. Our duty is simply to look at the terms of each separate policy and to determine if it affords coverage under the facts presented. We will first consider the automobile policy.

In one sense, both Brenner and Luzadder were making a "use" of the vehicle owned by Luzadder while they were riding in it as passengers,[2] and if the injury sustained was one "arising out of" its use, or its ownership, it is one for which there would be coverage under the automobile policy. Courts, construing the "arising out of" clause which is contained in the Mission policy, have held that the words are " * * broad, general, and comprehensive terms effecting broad coverage * * * "[3] The words "arising out of," however, import a concept of causation, which has been applied by the courts as described by the editor of a pertinent annotation:[4]

"All the cases agree that a causal relation or connection must exist between an accident or injury and the ownership,

maintenance, or use of a vehicle in order for the accident or injury to come within the meaning of the clause 'arising out of the ownership, maintenance, or use' of a vehicle, and where such causal connection or relation is absent coverage will be denied." 89 A.L.R.2d at 153.

Two recent authorities amplify and give application to this generally stated requirement in factual situations closely analogous to the case at bar. In Mason v. Celina Mutual Ins. Co., 423 P.2d 24 (Colo.1967), one Mason who had recently been a passenger in a car and who was sitting in the parked car accidentally shot another while toying with a pistol. When suit was commenced against Mason, he asserted coverage under the automobile owner's insurance policy. The court held that, assuming that Mason was an insured and was using the car in some technical sense, the injury was not one " * * * originating from the use of the vehicle as such." The court quoted from 7 Appleman, Insurance Law and Practice § 4317, at 146, the principle that "The accident must have arisen out of the inherent nature of the automobile, as such." 423 P.2d at 25. The lower court's ruling that no coverage existed was affirmed.

While *Mason* involved a parked car, a shooting accident in a moving car was the subject of National Union F. Ins. Co. of Pittsburgh, Pa. v. Bruecks, 179 Neb. 642, 139 N.W.2d 821 (1966). In *Bruecks,* a passenger in a car was attempting to unload a rifle in the back seat when the gun discharged, wounding the driver. The passenger claimed coverage under two automobile policies (and also under a comprehensive personal liability policy, which will be hereinafter discussed). The Supreme Court of Nebraska held, reversing the trial court, that there was no coverage under

2. See the holding to this effect in National Union F. Ins. Co. of Pittsburgh, Pa. v. Bruecks, 179 Neb. 642, 139 N.W. 2d 821 (1966). The case is discussed in detail below.

3. Red Ball Motor Freight v. Employers Mut. Liability I. Co., 189 F.2d 374, at

378 (5th Cir. 1951); and see Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W. 2d 181, 154 A.L.R. 1088 (1944).

4. Automobile liability insurance: what are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicle, 89 A.L.R.2d 150.

either of the automobile policies. The court stated, at 139 N.W.2d 827:

> "The contracting parties plainly contemplated an accident immediately identifiable with the ownership, maintenance, or use of the vehicle. It does not appear to us, however, that the occurrence here will fit the plain, ordinary meaning of those categories within any reasonable interpretation of them."

A number of the authorities in this area state, consistent with defining the term "arising out of" to mean "originating from" or "growing out of" or "flowing from," that the requisite causal relation need not be that of direct and proximate cause,[5] and one court has stated that "arising out of" means "causally connected with, not proximately caused by."[6] Another has stated that it is sufficient if the use is "connected with the accident or the creation of a condition that caused the accident."[7] There are cases, too, which stretch far to find the requisite causal connection.[8] But the requirement of *some* causal relation or connection persists, and we believe that a close factual analysis of the cases cited by appellant[9] where a causal connection has been found serves to distinguish them from a case like the present one, where the injury results from the discharge of a gun in the hands of a person who happened to be riding in a vehicle at the time. From the standpoint of causation, this injury could have occurred in the woods, in a hunting lodge, or in a house. That the situs of the accident was in fact within a motor vehicle and the fact that both the tort-feasor and the injured party were "using" the car at the time does not make the injury one "arising out of the * * * use" of the

vehicle. Nor did the injury result from any incident of "ownership" of the vehicle. We have found no authority contrary to the reasoning or result of the *Mason* case or that portion of the *Bruecks* case which holds that there was no coverage under the automobile policies on the facts before us here.[10] We endorse those holdings and agree with the trial judge that there is no coverage under the automobile policy issued by the appellee Mission Insurance Company.

We now come to the personal liability coverage under the Aetna homeowners policy. Much of what has been said with respect to coverage under the automobile policy is pertinent here, but in the opposite direction—toward coverage rather than away from it.

We start with the familiar proposition that exceptions or exclusions in an insurance contract are strictly construed in favor of the insured and coverage and against the insurer. 1 Couch on Insurance 2d § 15:92, at 835 et seq.; and see Swasey v. Massachusetts Protective Ass'n, 96 F.2d 265 (9th Cir. 1938).

The "special exclusion" to the broad personal liability insuring agreement in the Aetna policy set out above merely states that the personal liability and other coverage set forth under Section II of the policy "Does Not Apply" " * * * to the ownership, maintenance, operation, use, loading or unloading of * * * automobiles * * *" There is thus no stated *nexus* between the liabilities for which coverage is provided under the insuring clause and the subject matter of the exclusion, that is, there is no language in the exclusion *either*

---

5. See cases cited in n. 3 above.

6. Manufacturers Cas. Ins. Co. v. Goodville Mut. Cas. Co., 403 Pa. 603, 170 A. 2d 571, at 573 (1961).

7. Carter v. Bergeron, 102 N.H. 464, 160 A.2d 348, 354, 89 A.L.R.2d 142 (1960).

8. See, e. g., National Indemnity Co. v. Ewing, 235 Md. 145, 200 A.2d 680 (1964).

9. See cases cited in the Annot., 89 A.L.R. 2d 150, at 154–155.

10. Probably the most nearly analogous case on its facts, holding that coverage existed, is Fidelity and Casualty Company of New York v. Lott, 273 F.2d 500 (5th Cir. 1960), but there the passenger-hunter "used" the roof of the car as a gun rest while shooting. No comparable functional use is involved in the facts of the accident in the present case.

with respect to liabilities for injuries "caused by" or "arising out of" the use, et cetera, of automobiles, *or* with respect to liabilities for or with respect to injuries "occurring during" use or "while using" et cetera, automobiles. Without some connecting link, however, the stated exclusion becomes meaningless. We believe there is necessarily implied a causation *nexus*. In Appleman's discussion of "General Liability Coverages," it is stated:

"Where accidents arising in connection with the maintenance, use, or operation of an automobile are excluded, this has been held to contemplate accidents immediately associated therewith. The insurer would be liable where the injury did not arise out of a service directly connected with the use of such vehicles." 7A Appleman, Insurance Law and Practice § 4500, at 71, citing Zurich General Accident & Liability Ins. Co. v. American Mut. Liability Ins. Co. of Boston, 118 N.J.L. 317, 192 A. 387 (1937), for propositions stated.

Construing this coverage and its exclusion as we must, in a reasonable manner and giving ordinary meaning and effect to the terms used therein,[11] we think that there must be a causal connection between the liability asserted against the insured and the use of the automobile, and as we have indicated, the facts of this case show no causal connection between the liability to be asserted against Luzadder and the "ownership, maintenance, operation, use, loading or unloading of" his automobile. This injury resulted from the use of a gun, not the use of a car.

Aetna has cited and placed reliance upon two decisions in support of its position, McDonald v. Great American Insurance Company, D.C., 224 F.Supp. 369 (1963), and the previously mentioned *Bruecks* case from Nebraska.

In the *McDonald* case, the insured, under a homeowners policy, threw a lighted "cherry bomb" explosive out of the car in which he was riding and into a passing car, injuring passengers in the latter. The injured persons brought suit against the insured, alleging in one count that the act was done "intentionally" and "wilfully and wrongfully," and alleging a negligent throwing in another count. The court held, in one portion of its opinion, that the homeowners insurer had no duty to defend the insured on the negligence count because the special exclusion identical to the one before us here was similarly inapplicable to the use of an automobile away from the premises.

We are not persuaded that the *McDonald* case is apposite. In the first place, we think that its holding must be viewed in the light of the peculiar facts of the case, the alternative count charging an intentional wrong, and the universal rule based upon strong policy considerations that one cannot avail himself of insurance coverage to protect himself from the consequences of his intentional acts.[12] Even viewing in isolation the count charging a negligent throwing of the cherry bomb, we can see how the district judge might possibly look upon the throwing of a lighted explosive from a moving car into the vicinity of others as an act in some way connected with the use of the car. Wheels provide false courage for the doing of many juvenile acts.

The cases cited by the district judge at 224 F.Supp. 372, in support of his finding that the exclusion was applicable, are all cases construing, not exclusions, but the "arising out of the * * * use" clause in automobile insurance policies. Since there is a stricter rule of construction applicable to exclusions than to basic coverage provisions, we do not think that the cases interpreting the broad "arising out of" clause in automobile policies are controlling in interpreting the effect of this exclusion in the homeowners policy.

11. Prudential Insurance Company of America v. Barnes, 285 F.2d 299 (9th Cir. 1960).

12. See, e. g., Kraus v. Allstate Insurance Company, 379 F.2d 443 (3d Cir. 1967).

· Nor do we regard that portion of the *Bruecks* case which considers a comprehensive personal liability policy as sustaining Aetna's position here. The comprehensive personal liability insurer in *Bruecks* sought to deny coverage on the basis of an exclusion, similar to the one before us here, for use of automobiles away from the premises. The court in the *Bruecks* case did not hold that no coverage existed by reason of the exclusionary clause; the court simply held that, by reason of the liability insurer's actions *vis a vis* the insured in processing the claim without denial of coverage or reservation of rights, it was estopped to deny coverage. As stated by the court, at 139 N.W.2d 828:

> "We find, therefore, that by its conduct National construed the policy to provide coverage in this instance."

The court, therefore, did not rule squarely upon the issue before us here.

■ Finally, we note that it was and is within the power of Aetna to draft and amend its homeowners policy to set forth more clearly the scope of the exclusionary clause to its personal liability coverage so as to exclude accidents occurring in vehicles. In view of our Financial Responsibility Act [13] and its construction in Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145 (1963), and similar cases, an automobile insurer would have no such power.

Judgment affirmed in part and reversed in part.

HATHAWAY, C. J., and KRUCKER, J., concur.

---

13. A.R.S. § 28–1170, as amended.