20 Wn. App. 138 (1978)
579 P.2d 991
TRANSAMERICA INSURANCE GROUP, Appellant,
v.
UNITED PACIFIC INSURANCE COMPANY, Respondent.
No. 2569-2.
The Court of Appeals of Washington, Division Two.
May 17, 1978.
*139 Richard J. Jensen, Mark G. Honeywell, Joseph F. Quinn, and Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern, for appellant.
William J. Rush, for respondent.
PETRIE, J.
Plaintiff, Transamerica Insurance Group, appeals from the judgment dismissing its claim for reimbursement from another carrier. We reverse and, because of the agreement as to damages, direct entry of judgment in favor of Transamerica.
On November 5, 1971, Albert Savisky and Jack Rea were riding in Savisky's 4-wheel drive vehicle; the two men were in the mountains on an elk-hunting expedition. Upon entering the vehicle, both men had placed their rifles in the gun rack which was attached to the left side of the vehicle behind the driver's seat. Rea told Savisky, the driver, that he wanted to have his gun available and ready to use in case they spotted some elk. Savisky then stopped the vehicle and leaned forward, over the steering wheel, so that Rea could reach the weapon and remove it from the rack. After the muzzle of the rifle had been lifted out of the rack, the gun discharged. Savisky was hit by the bullet and was seriously injured.
Savisky initiated an action for damages against Rea in the Superior Court for Pierce County. Transamerica undertook to defend Rea pursuant to the terms of his homeowner's insurance policy. Eventually, Savisky settled for $47,500, an amount within the policy limits. Transamerica then filed the present action for reimbursement or indemnity against the United Pacific Insurance Company, Savisky's automobile liability carrier at the time of the accident. Prior to trial, the parties stipulated that if the automobile policy covered this accident at all, coverage would be primary.
*140 After a bench trial, the court found that Savisky was injured while Rea was in the process of unloading the gun from the vehicle. Because such an accident would not be covered by the United Pacific policy,[1] the trial court concluded that Transamerica's claim for reimbursement was not well founded and entered judgment dismissing the action.
Three of the assignments of error raised by Transamerica challenge the trial court's findings and conclusions concerning the "loading and unloading" issue. Transamerica contends (1) the finding that the accident occurred during the unloading of the vehicle is not supported by substantial evidence; (2) section 3 of the policy, restricting coverage when injury occurs while loading and unloading automobiles, is ambiguous and must be construed against United Pacific; and (3) the restriction on persons insured in section 3 violates the standard provision requirements of the insurance code, RCW 48.18.130(2). We agree with Transamerica's position on the substantial evidence question, and therefore need not address the remaining two arguments.
The scope of the phrase "loading and unloading" has been a subject of disagreement among courts which have considered its meaning; currently courts are divided between two theories  the "coming to rest" doctrine, and the more liberal "complete operations" view. 12 R. Anderson, Couch Cyclopedia of Insurance Law § 45:123 et seq. (2d ed. 1964). The distinction between these two theories was succinctly summarized by the court in Allstate Ins. *141 Co. v. Valdez, 190 F. Supp. 893, 894-95 (E.D. Mich. 1961). The court stated:
Under the former category, [coming to rest] "loading" would cover only the period during which the article has left its place of rest and is in the process of being carried to or placed in the vehicle. Conversely, "unloading" terminates when the article is no longer being physically lifted from the vehicle but has actually reached a place of rest....
Broader in scope than the "coming to rest" theory, the "complete operation" interpretation covers the entire process involved in the movement of the article, thereby omitting any distinction between "loading" and preparatory activities or "unloading" and "delivery."
(Citations omitted.) See also 7 Am.Jur.2d Automobile Insurance § 88 (1963); 95 A.L.R.2d 1122 (1964).
Although the "loading and unloading" controversy was noted and briefly discussed in Aetna Ins. Co. v. Kent, 85 Wn.2d 942, 540 P.2d 1383 (1975), this jurisdiction has not yet adopted either the "coming to rest" or "complete operation" theory of liability. We, too, need not choose between the two views. Nevertheless, even under the more expansive "complete operations" view, we find nothing substantial in the record to support the trial court's determination that the accident occurred "during an unloading process."
[1] United Pacific asserts that because Rea wanted to have his gun available in order to be able to react quickly upon spotting an elk, coupled with the undisputed finding that the muzzle of the gun had been removed from the gun rack at the time the accident occurred, the court's determination on this issue was correct. That evidence merely establishes an attempted repositioning of the weapon in the vehicle for possible use if, in the future, several other events occur and other decisions are made: The hunters would have to spot an elk, decide that a shot would be worthwhile, decide to stop, and finally decide to debark rather than shoot while seated in the vehicle. There is no evidence in the record to support even an inference that they were preparing to unload. Accordingly, we conclude *142 that the finding was not supported by substantial evidence and, therefore, reverse the trial court on that issue.
[2] Despite having resolved the loading and unloading issue in favor of Transamerica, we must still address Transamerica's final contention that, as a matter of law, the accident arose out of the "use" of the vehicle. The United Pacific policy states that the company will pay on behalf of the insured
all sums which the insured shall become legally obligated to pay as damages ...
...
arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile.
(Italics ours.) Transamerica correctly concedes that liability attaches only if there is some causal connection between the use of the vehicle and the accident. The fact that the vehicle was the "situs" of the accident is not, in itself, sufficient to bring the occurrence within the coverage of the policy. State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co., 14 Wn. App. 541, 543 P.2d 645 (1975); Handley v. Oakley, 10 Wn.2d 396, 116 P.2d 833 (1941); 12 R. Anderson, Couch Cyclopedia of Insurance Law § 45:31-32 (2d ed. 1964); 89 A.L.R.2d 150 (1963).
[3] Although the trial court made no formal finding regarding this matter, the court's oral opinion indicates that it believed the rifle discharged when the trigger brushed against the rear bracket of the gun rack. Because this determination is consistent with the written findings, we will adopt the oral opinion as the court's finding on the issue. Gay v. Cornwall, 6 Wn. App. 595, 494 P.2d 1371 (1972).
[4] Thus, it appears that the vehicle, through its permanent attachment, contributed in some fashion toward producing the injury and was more than simply the place in which the injury occurred. This constituted a significant causal connection between the discharge of the rifle and the use of the vehicle. The use of the vehicle need not have been a proximate cause of the injury in order to fulfill the *143 "arising out of the use" requirement. State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co., supra. We hold that the occurrence was within the foreseeable risk of the United Pacific policy.
Judgment is reversed, and this cause is remanded with direction to enter judgment in favor of Transamerica in the sum of $47,500.
REED, A.C.J., concurs.
SOULE, J. (dissenting)
I agree with the conclusion that there is no substantial evidence that this was an unloading operation. However, I have difficulty in perceiving the distinction between the present case and State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co., 14 Wn. App. 541, 543 P.2d 645 (1975). There, the court was concerned with ascertaining the motoring risks that the parties intended to cover by the automobile policy. In discussing the risks to be anticipated, the court said at page 544:
State Farm contends that Wold and Rogers used the vehicle on a hunting trip. Therefore, they must have anticipated transporting guns in the automobile. That is obvious, but the unloading of a weapon in the automobile is not normally anticipated. The more pertinent inquiry is whether the parties to the contract intended to cover the risk which flows from the unloading of a weapon in a moving vehicle returning from a hunting trip, when the ordinary experiences of mankind dictate that guns are customarily unloaded when not intended for immediate use. National Union Fire Ins. Co. v. Bruecks, 179 Neb. 642, 139 N.W.2d 821 (1966). Wold's unloading of the weapon in the moving vehicle was both illegal and unsafe. It caused an injury that may or may not have been foreseen or expected from such use of the weapon, but can it be said that Wold's handling of the dangerous instrumentality in this manner was a natural and reasonable incident or consequence of the use of the vehicle on a hunting trip? We cannot so conclude.
In the case before us, the gun was also in an illegal condition, being loaded, and was handled carelessly by the passenger in his effort to move it. I find no more reason to *144 foresee that the gun would be moved from the rack while the vehicle was in motion than that it would be unloaded. I am unable to conclude that the fortuitous touching of the trigger upon some portion of the vehicle, if that be what happened, rather than the brushing of the trigger by the passenger, was any more of a natural and reasonable incident or consequence of the use of the vehicle on a hunting trip than in the State Farm Ins. case. In my view, the vehicle was merely the situs of the accident and this case should be controlled by State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co., supra. Accordingly, I dissent.
Reconsideration denied June 27, 1978.
Appealed to Supreme Court June 29, 1978.
NOTES
[1] Section 3 of the Persons Insured Clause of the automobile liability policy states:

"With respect to the loading and unloading of automobiles, the insurance provided under 1 and 2 [persons/vehicles insured sections of policy] with respect to others than the named insured and a relative does not apply,
(a) to bodily injury sustained by (i) any named insured or relative (ii) any employee of the named insured, or (iii) any other person, if such injury is caused by other than the named insured, ...
(b) to property damage (i) to property owned or used by or in the care, custody or control of the named insured or a relative, or (ii) to property as to which the named insured or a relative for any purpose is exercising physical control.