449 So.2d 105 (1984)
Keith J. TOLLESON and Gerald L. Tolleson
v.
STATE FARM FIRE AND CASUALTY CO., et al.
No. 83 CA 0612.
Court of Appeal of Louisiana, First Circuit.
April 3, 1984.
Writ Denied June 1, 1984.
*106 James Funderburk, Houma, for Keith Tolleson and Gerald Tolleson.
Craig Nelson, New Orleans, for Prudential Property & Casualty Co.
Jerry H. Schwab, Houma, for State Farm Mutual Auto Insurance Co.
Lloyd Bourgeois, Thibodaux, for State Farm Fire & Casualty Co. and Mr. & Mrs. Peter Cox.
Before COVINGTON, COLE and SAVOIE, JJ.
COLE, Judge.
The issues presented here are those of negligence, vel non, and insurance coverage dependent upon the "use" of a motor vehicle.
Plaintiff Keith Tolleson (age 18) and two friends, Mike Songe and Timothy Cox (both age 17), gathered for a morning rabbit hunt on October 5, 1980. The three boys met at the Songe home, loaded their hunting equipment into the Songe car, and traveled to the hunting site. After the hunt they reloaded the equipment into the car and returned to the Songe house. They left most of the gear in the car, and spent considerable time in the house eating and resting. Later the same day the boys prepared to go hunting again. As they made preparations to leave the house, Mike Songe handed Keith and Timothy two guns which were to be used on the hunt. The two boys left the house and began placing the guns in the hatchback area of the car. Mike was delayed in leaving the house by a phone call from his mother.
One of the guns furnished by Mike was an old .16 gauge "crack barrel" shotgun. Keith and Timothy examined this gun and discussed the possibility of such a gun having been used in Civil War times, perhaps in a bank robbery. For some reason this conversation prompted Cox to remove his .16 gauge automatic shotgun (which had been used on the morning hunt) from the rear of the car. In the course of the conversation concerning bank robberies, Cox pointed his gun toward Keith and (believing it to be unloaded) pulled the trigger. The gun fired into Keith's abdomen, causing serious injury.
Keith and his father, Gerald Tolleson, filed suit against the following parties: *107 Timothy Cox; his parents, Mr. and Mrs. Peter Cox; their homeowner's insurer, State Farm Fire and Casualty Company; Mike Songe's automobile liability insurer, State Farm Automobile Insurance Company; and the Tolleson's uninsured motorist carrier, Prudential Property and Casualty Insurance Company.
After trial on the merits the court found the accident was caused solely by the negligence of Timothy Cox and accordingly rendered judgment against him, his parents, and State Farm Fire and Casualty Company in the total sum of $82,518.16. This amount represented $28,558.16 in medical payments, $3,960 in lost wages and $50,000 in general damages.
There is no dispute on appeal as to the amount of damages awarded by the trial court. Plaintiffs note in their brief they have already been paid the policy limits by State Farm Fire. They argue on appeal the court erred in failing to find Mike Songe negligent and in failing to conclude the Songe vehicle was "in use" at the time of the accident. If we were to agree with plaintiff on both of these issues, the State Farm Auto policy and the Prudential policy would both provide coverage.
Concerning Mike Songe's alleged negligence, plaintiffs do not dispute the fact that at the moment of the accident, Mike was inside the house, talking on the phone with his mother. He came outside only when he heard the gun fire. However, plaintiffs contend the loaded .16 gauge automatic shotgun was a dangerous instrumentality and required the use of extraordinary care by Mike Songe. They argue he breached this standard of care by failing to ensure that Cox's gun was unloaded before allowing it to be transported in his vehicle.
In support of this argument plaintiffs cite Valence v. State, 280 So.2d 651 (La. App. 1st Cir.1973), writ refused 282 So.2d 517 (La.1973). In Valance the defendants were a state trooper, Lynwood Wilcox, and his wife Karen.[1] In connection with his work, Trooper Wilcox kept a loaded revolver in the glove compartment of the family car. Mrs. Wilcox, accompanied by her three year old daughter, drove the car to visit a friend. The vehicle was left unlocked in the driveway where a group of young children were playing. One of the children entered the car and removed the gun from the glove compartment. The child fired the gun at his brother, causing serious injuries. The court stated that a loaded gun is a dangerous instrumentality and that the law imposes a duty of extraordinary care on those in control of such weapons. The court rendered judgment against the Wilcoxes, finding them to have breached this duty by leaving the loaded gun in a place easily accessible to small children.
We agree wholeheartedly that a loaded gun is a dangerous instrumentality and imposes a duty of extraordinary care on those who have control of it. However, the facts of the present case and the Valance case are entirely different. In Valance, the persons who had control of the gun were the Wilcoxes. They indeed had a duty to keep the gun out of the reach of small children. (Phrased differently, they had a duty to protect children from the possibility of being harmed by the gun.) They breached this duty by leaving the loaded gun in an unlocked glove compartment of an unlocked car. In the present case, Timothy Cox (as opposed to Mike Songe) was the person in control of the gun. Songe was simply the driver of the vehicle and had no reason to assume responsibility for the gun of his 17 year old friend. It was Timothy Cox who was the owner of the gun, who had hunted with the gun that morning, and who had carelessly discharged the gun while joking about a bank robbery. He certainly had a duty to use extraordinary care in handling the gun (i.e., a duty to protect those around him from being harmed by the gun) and failed to do so. Under the circumstances of this case, Mike Songe, who was not "in control" of the gun, had no duty whatsoever to *108 protect plaintiff from injury by Timothy Cox.
Based on this analysis, we conclude Mike Songe was not negligent. Even if we had reached a different result concerning his negligence, there can be no liability on the part of State Farm Auto unless we find the vehicle was "in use" at the time of the accident.
The State Farm Auto policy is applicable to injury arising out of the "... ownership, maintenance or use of the owned automobile...." Plaintiffs contend the Songe vehicle was in use at the time of the accident in that it had been used for the morning hunt, it had transported the loaded gun back to the Songe house following the hunt, and it was going to be used for the afternoon hunt.
The meaning of the term "use" has been the subject of much litigation. It is well established that one need not be actually operating or driving a vehicle in order to be using it. See, Baudin v. Traders and General Insurance Company, 201 So.2d 379 (La.App. 3d Cir.1967), writ refused, 251 La. 224, 203 So.2d 557 (La.1967).[2] Likewise, under the terms of the policy, the word "use" includes loading and unloading of the car.
Plaintiffs cite several cases which have given a broad interpretation to the word "use." In Bolton v. North River Insurance Company, 102 So.2d 544 (La.App. 1st Cir.1958) plaintiff was standing outside the insured vehicle when a passenger seated in the car slammed the car door on plaintiff's hand. In Cagle v. Playland Amusement, Inc., 202 So.2d 396 (La.App. 4th Cir.1967), writ denied, 251 La. 403, 404, 204 So.2d 578 (1967) plaintiff was injured by a gun which accidentally discharged when defendant's employee used it to break into the insured car to retrieve the car keys. In Baudin, supra, the defendant was sitting in his parked car. The car's position blocked the view for oncoming cars; as a result, an approaching auto struck a child pedestrian. In all three cases the courts found the insured automobiles were being "used" within the meaning of the applicable policies.
We note a distinct difference in the facts of these cases and the present case. In each of the cited cases the injury-causing activity is one that can be readily associated with the use of a car. In other words, a car door slamming, a parked car blocking the view, and the breaking of a window to gain entry into the car are all activities which can be easily characterized as "uses" of the car. But in the present case, the injury-causing activitya young man carelessly handling a loaded shotgunis simply not an activity associated with the "use" of the automobile. As the trial court noted, the mere fact that the gun had been stored in the automobile immediately prior to the time of the injury is not a sufficient connexity to constitute a "use" of the car.
A case of logical persuasion is Ramsey v. Continental Insurance Company, 286 So.2d 371 (La.App. 2d Cir.1973), writ refused 287 So.2d 187 (La.1973). There the insured, Marty Wood, had driven to school in the family automobile with a loaded shotgun on the front seat. After school he returned to his car and moved the gun from the front to the back seat. As he did so, the gun discharged, injuring two boys in a passing automobile. The boys sued the Woods' homeowner insurer who in turn third-partied the Woods' automobile insurer. The homeowner's policy excluded coverage for injuries arising out of "... the ownership, maintenance, operation, use, loading or unloading of ... any motor vehicle." Therefore, the issue was whether or not the injury arose out of the use of the insured vehicle.
The court discussed Cagle, supra, and Baudin, supra, and noted the test for determining what constitutes a use is actually two-fold: was the car being used at the time of the accident and was the use of the car directly connected with or a cause of *109 the ensuing accident?[3] The court concluded that although Marty Wood may have been using the vehicle, the accident was not the result of that use but rather the result of the discharging of the shotgun, which itself had no relationship to the use of the vehicle.
Certainly in the present case we must reach the same conclusion. Even if we were to assume arguendo that the vehicle was being "used," the accident was caused not by the use of the vehicle, but by the discharging of the shotgun. In the present case, as in the Ramsey case, the discharging of the shotgun was caused by the negligent handling of the gun and had absolutely no relationship to the use of the vehicle.
The facts of the present case are similar to those of Bruno v. Hartford Accident & Indemnity Co., 337 So.2d 241 (La.App. 3d Cir.1976). There, three teenage boys had gone hunting and had used a vehicle owned by the father of one of the boys, Lewis Lauve. The young men returned from the hunt and parked the car in the Lauve driveway. One of the boys, Robert Kubes, had opened the trunk in order to unload the hunting gear when John Bruno arrived on his bicycle. Bruno and Kubes entered into a "dare" concerning Kubes firing the gun while inside the city limits. Kubes removed his unloaded double barrel shotgun from the car, placed a shell in one chamber, pulled the trigger to the other empty chamber, and then declared the shot to be a "dud." He repeated this farce several times (while standing near the vehicle) and then turned toward the Bruno youth. The gun discharged and John Bruno was killed instantly.
A wrongful death action was filed against the insurer of the Lauve vehicle. The plaintiffs argued the car was being used because Kubes was in the process of unloading his equipment from the vehicle. The court rejected this argument, concluding that at the time of the accident Kubes had turned aside from the unloading and was playing a game. The court stressed a "common sense" approach should be used in determining whether or not the negligent act was a reasonable and natural consequence of the use of the automobile, within the contemplation of the parties to the insurance contract.
Using a common sense approach we can reach no other conclusion than that the vehicle in the present case was not being used. The gun that caused the injury was not being loaded into the car; it had been stored there since the morning hunt. Timothy Cox was not "unloading" the gun from the car in the usual sense of the word; he simply picked it up to demonstrate his point about robbing a bank. Although he intended to replace the gun back into the vehicle, at the moment of the accident, he, like the boy in the Bruno case, was engaged in "horseplay" with Keith Tolleson. By no stretch of the imagination can it be said that it was within the contemplation of the parties to the insurance contract that a person standing several feet from the car, playing around with a gun that had been stored in that car, would be "using" the vehicle.
For these reasons, we conclude the trial court did not err in dismissing the case as to State Farm Automobile Insurance Company and Prudential Property and Casualty Insurance Company. The judgment is affirmed. Appellants are to pay all costs.
AFFIRMED.
NOTES
[1] Also named as a defendant was Wilcox's employer, the State of Louisiana.
[2] The elaborate "arising-out-of-use" test enunciated in Baudin was disapproved in Carter v. City Parish Government, Etc. 423 So.2d 1080 (La. 1982), rehearing denied 1982.
[3] In Carter, supra, the court criticized this approach as relying too heavily on proximate cause concepts "... which are not very helpful to the legal cause inquiry and not relevant to the use of the automobile question." Although this may be true under some circumstances, here the same result obtains under either proximate cause or duty-risk concepts.