CRITERION INSURANCE COMPANY, a Washington D.C. Corporation, Appellant,

v.

Mack L. VELTHOUSE, and James M. Harman, Appellees.

No. S–730.

Supreme Court of Alaska.

Oct. 31, 1986.

Rehearing Granted in Part and Opinion Amended Feb. 25, 1987.

As Amended Feb. 19, 1988.*

Marcus R. Clapp, Gregory W. Lessmeier, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellant.

James A. Parrish, Parrish Law Office, Fairbanks, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

BURKE, Justice.

Mack Velthouse, while "horsing around" with friends, picked up a loaded shotgun in his vehicle and pointed it at James Harman. Velthouse believed that the gun was emp-

* Editors Note: This opinion was originally published at 732 P.2d 180. It is published here as corrected.

ty, but it discharged[1] and Harman was seriously injured. The question in this appeal is whether Velthouse's liability for Harman's injuries is liability "arising out of the ownership, maintenance or use of [Velthouse's] vehicle," so as to be covered by a policy of insurance issued to Velthouse by Criterion Insurance Company. We hold that it is not. Under the policy, liability coverage extended to "damages which an insured becomes legally obligated to pay because of: (1) bodily injury ... arising out of the ownership, maintenance or use of the owned auto...." (Emphasis deleted). The policy did not cover injury intentionally caused by the insured.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Harman sued Velthouse and claimed that Velthouse's negligence "in loading a charged shotgun into his vehicle and using this vehicle for transporting a charged shotgun" while carrying passengers legally caused Harman's injuries. Criterion selected and paid Robert Groseclose, a Fairbanks attorney, to defend Velthouse.[2] Criterion reserved the right to contest coverage.

Criterion then began a declaratory judgment action against Velthouse and Harman on coverage.[3] Harman moved for judgment on the pleadings. The court found that "if the allegations made by ... [Harman] are proven, then there would be coverage under Criterion's policy." Criterion moved for summary judgment. It argued that the policy did not cover Velthouse's mishandling of the gun. The court ruled

that "contested issues of fact which a jury could disagree upon" precluded summary judgment.

On the eve of trial in *Harman v. Velthouse*, Velthouse admitted liability and the case proceeded to trial on damages. The jury awarded Harman $495,000. Harman then moved for entry of judgment in *Criterion v. Velthouse* to establish coverage. The court determined that Velthouse's admissions in the underlying suit bound Criterion. The court also entered a final judgment on liability for Harman. From this judgment and the denial of its summary judgment motion, Criterion appeals.

## II. DISCUSSION

■ When reviewing the denial of a motion for summary judgment we must determine whether there is a genuine issue of material fact and whether the moving party deserves judgment as a matter of law. *State v. Jennings*, 555 P.2d 248 (Alaska 1976). Criterion argues that the trial court erred in denying its motion for summary judgment because, as a matter of law, on the undisputed facts, there was no coverage under the policy. We agree.[4]

The events leading to Harman's injury are undisputed.[5] If the insurance policy does not cover the conduct surrounding the accident as a matter of law, then the trial court improperly denied Criterion's motion for summary judgment.

■ Velthouse's policy covered injuries "arising out of the ... use" of his truck. This language typifies auto liability insur-

---

1. The gun had been left in Velthouse's vehicle following a hunting trip. As so many others have done in like circumstance, Velthouse committed the classic blunder and assumed that the gun had been unloaded.

2. We note potential problems in Criterion's selection of "independent" counsel for Velthouse. *See San Diego Navy Federal Credit Union v. Cumis Insurance Society*, 162 Cal.App.3d 358, 208 Cal.Rptr. 494, 506 (1984) (an insurer proceeding under a reservation of rights must allow the insured to select its own counsel at the insurer's expense). However, we express no opinion on this issue at this time.

3. Velthouse has not appeared in this action.

4. The parties also dispute whether Velthouse's admissions bound Criterion. In this case, the court ruled on Criterion's motion before Velthouse admitted liability under the complaint. Had the trial court correctly granted Criterion's summary judgment motion, it would never have had to consider the binding effect of the admissions. Because of our ruling today, we need not address the effect of the admissions.

5. The trial court did not specify the facts it claims were disputed. A review of the record convinces us that no material facts remain disputed. No one denied that Velthouse was neither loading the gun into the vehicle nor unloading the gun from the vehicle when it fired. Rather, Velthouse was engaged in "horseplay."

ance policies. *See generally* Annotation, *Automobile Liability Insurance: What Are Accidents or Injuries "Arising Out of Ownership, Maintenance, or Use" of Insured Vehicle,* 15 A.L.R.4th 10, 15 (1982). Alaska broadly interprets insurance coverage in favor of the insured. *See, e.g., Marwell Construction v. Underwriters at Lloyd's, London,* 465 P.2d 298, 313 (Alaska 1970). But even a broad interpretation requires some causal connection between the "use" of the automobile and the injury. *Cf. C.J.M. Construction v. Chandler Plumbing & Heating,* 708 P.2d 60, 65 (Alaska 1985) (Matthews, J. dissenting).[6] While we have not previously addressed the degree of causation required by "arising out of" in this context, the term's scope has been greatly litigated in other jurisdictions. *See* 15 A.L.R.4th 10.

Many courts ask whether the injury "originated from," "had its origin in," "grew out of," or "flowed from" the use of the vehicle. *See, e.g., Brenner v. Aetna Insurance,* 8 Ariz.App. 272, 445 P.2d 474, 478 (1968); *Shinabarger v. Citizens Mutual Insurance,* 90 Mich.App. 307, 282 N.W.2d 301, 305 (1979); *National Family Insurance v. Boyer,* 269 N.W.2d 10, 15 (Minn. 1978); *Cameron Mutual Insurance v. Ward,* 599 S.W.2d 13, 15 (Mo.App.1980). These phrases, however, merely reformulate the underlying question. More significant than semantics is judicial behavior. Here, courts do not require proximate cause in its strict legal sense. Rather, most courts only require that the vehicle be more than the mere situs of the accident and that the use of the vehicle relate to its inherent use as a motor vehicle. *See, e.g., Toler v. Country Mutual Insurance,* 123 Ill.App.3d 386, 78 Ill.Dec. 790, 794–796, 462 N.E.2d 909, 913–15 (1984).

■ The Missouri Court of Appeals has isolated five categories of accidental shootings involving motor vehicles. *Cameron Mutual,* 599 S.W.2d at 15. These categories conveniently describe the significant differences among the reported cases. The first category involves the vehicle as a "mere situs" for the accident. *Id.* This occurs when the vehicle's occupant handles or plays with a gun causing it to accidentally discharge inside a moving or stationary vehicle. There is no coverage under these circumstances, because there is no causal connection between the discharge of the gun and the inherent use of the vehicle. *Id. See, also, Brenner,* 445 P.2d 474, 478 (no coverage where on return from hunting trip, gun discharged when passenger in front seat played with gun and pointed it at passenger in rear seat); *Mason v. Celina Mutual Insurance,* 161 Colo. 442, 423 P.2d 24, 25 (1967) (no coverage where, after target practice, gun discharged when passenger sitting in parked car played with gun); *Boyer,* 269 N.W.2d at 15 (no coverage where after leaving bar, passenger sitting in parked car accidentally discharged gun wounding entering passenger).

The second category involves discharges which occur while loading or unloading of unloading the vehicle. Courts generally view liability policies as extending coverage to the loading and unloading process. *See, e.g., Toler,* 78 Ill.Dec. at 793, 462 N.E.2d at 912.[7] We discuss Harman's reliance on these cases below.

The third category involves the use of the vehicle as a "gun rest" while shooting. *Cameron Mutual,* 599 S.W.2d at 16. The courts are divided over whether there is coverage in these cases. The court in *Fidelity & Casualty Company of New York v. Lott,* 273 F.2d 500, 502 (5th Cir.1960), applying Texas law, gave the term "use" its broadest meaning and found a causal connection between the use of the vehicle

---

6. Justice Matthews noted that even where an insurance clause affords broad coverage for cases "arising out of ... [C.J.M.'s] performance of [the] subcontract," it will not cover all cases of negligence, but only those which arise out of C.J.M.'s performance.

7. Loading and unloading cases fall under two doctrines: the "coming to rest" doctrine (only actual lifting and placing of article into vehicle) and the "complete operations" doctrine (entire process of moving article without distinction between preparatory acts and actual loading). *See* Annotation, *Risks Within "Loading and Unloading" Clause of Motor Vehicle Liability Insurance Policy,* 6 A.L.R.4th 686 (1982).

as a gun rest and the resulting injuries to its passenger. More recent cases have distinguished *Lott* and refuse to interpret "use" as meaning other than use of the vehicle in its inherent status as a vehicle. *National Farmers Union Property & Casualty v. Gibbons*, 338 F.Supp. 430, 432–34 (D.N.D.1972) (North Dakota law); *Norgaard v. Nodak Mutual Insurance*, 201 N.W.2d 871, 874–76 (N.D.1972). The court in *Norgaard*, for example, found that the vehicle's use as a gun rest was an independent intervening cause of injury. 201 N.W.2d at 876. It, thus, denied coverage. *Id.*

■ The fourth category involves mounted gun racks which are considered part of the vehicle. *Cameron Mutual*, 599 S.W.2d at 16. Coverage exists when the accidental discharge occurs while the weapon is in or being removed from the gun rack. *Transamerica Insurance Group v. United Pacific Insurance*, 20 Wash.App. 138, 579 P.2d 991, 994 (1978), *aff'd*, 92 Wash.2d 21, 593 P.2d 156, 160 (1979) (rifle being lifted out of a gun rack discharged when the trigger brushed against the bracket, the court held that the physical involvement of the permanent attachment helped produce the injury); *Reliance Insurance v. Walker*, 33 N.C.App. 15, 234 S.E.2d 206, 211 (1977), *cert. denied*, 293 N.C. 159, 236 S.E.2d 704 (1977) (coverage found when gun in a permanently mounted gun rack discharged when the driver started the engine).

The final category involves discharges caused by movement of the vehicle, usually when the vehicle hits a bump in the road. *Cameron Mutual*, 599 S.W.2d at 16. Courts have little problem finding a causal connection between the use of the vehicle and the resulting injury in these cases. *See, e.g., State Farm Mutual Automobile Insurance v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 815–816, 514 P.2d 123, 127–28 (1973).

Harman argues that Velthouse's failure to unload the ammunition from the shotgun was part of the process of loading the gun into the truck and should be covered under the policy as a second category case. A Louisiana court rejected a similar argument in *Tolleson v. State Farm Fire and Casualty*, 449 So.2d 105 (La.App.1984), *cert. denied*, 450 So.2d 968 (La.1984). In that case, three youths, Cox, Tolleson and Songe were loading guns into a car for a hunting trip when the conversation turned to bank robberies. Cox pointed what he thought was an unloaded gun at Tolleson and pulled the trigger. The resulting shot seriously injured Tolleson. Tolleson argued that the driver of the vehicle, Songe, was required to use extraordinary care and make sure than Cox's gun was unloaded before allowing it to be transported in his vehicle. The court stated that

> at the moment of the accident [Cox] . . . was engaged in "horseplay" with Keith Tolleson. By no stretch of the imagination can it be said that it was within the contemplation of the parties to the insurance contract that a person standing several feet from the car, playing around with a gun that had been stored in that car, would be "using" the vehicle.

*Id.* at 109. The court further noted that "the injury-causing activity—a young man carelessly handling a loaded shotgun—is simply not an activity associated with the 'use' of the automobile." *Id.* at 108. The court concluded that "the discharging of the shotgun was caused by the negligent handling of the gun and had absolutely no relationship to the use of the vehicle." *Id.* at 109.

Harman relies on *Toler*, 78 Ill.Dec. at 790, 462 N.E.2d 909. In that case, the insured was hunting with friends. As he unloaded ammunition from his gun while outside his vehicle, the gun discharged and injured a companion. *Id.* 78 Ill.Dec. at 792, 462 N.E.2d at 911. In *Toler*, the policy covered any "accident arising out of the . . . use, including loading or unloading" of the defendant's truck. *Id.* 78 Ill.Dec. at 791, 462 N.E.2d at 910 (deletion in original). The court found coverage and distinguished mere situs cases. *Id.* 78 Ill.Dec. at 795, 462 N.E.2d at 914. It noted that unloading shells from a gun was a safety precaution, necessary before transporting the gun. As such, the court believed it part of the covered process of loading ma-

terial into the car.  *Id.*   78 Ill.Dec. at 796, 462 N.E.2d at 915.

■ We agree with the court in *Tolleson* and reject Harman's contention that this accident was the result of the process of loading equipment into the car.  This case has nothing to do with the loading or unloading of hunting equipment.  Velthouse's shotgun was placed in his truck for a fishing trip more than a week before the accident.  Harman was injured while Velthouse was horsing around in his truck while it was parked in a parking lot.  Even if we broadly interpreted "use" to include the vehicle as a mere moving receptacle for firearms as requested by Harman, under these facts, there is an insufficient causal connection between the injury and the transportation of the gun for a finding of liability.

■ This case is analogous to those cases where the vehicle was the mere situs of the accident.  Harman's injury resulted from Velthouse's negligent use of the gun, not the use of his truck.  Velthouse's handling of the gun had no connection with the use of the vehicle.  As a matter of law the accident could have occurred out in the field or in the home.  The truck's status as situs of these injuries is insufficient to extend coverage.  The trial court should have granted Criterion's motion for summary judgment.

REVERSED and REMANDED for proceedings consistent with this opinion.