763 P.2d 540

**SCOTTSDALE INSURANCE COMPANY, Plaintiff/Appellant,**

v.

**Ngoi VAN NGUYEN and Thu Thi Tran, husband and wife, d/b/a Interstate Industrial Movers; Louise Jenkins, surviving spouse of Roger H. Jenkins, deceased, mother and next friend for and on behalf of herself and Elvira Jenkins, Virgil Lyle Jenkins, and Terrence Sam Jenkins, Defendants/Appellees.**

No. 2 CA–CV 88–0124.

Court of Appeals of Arizona, Division 2, Department A.

June 30, 1988.

Review Denied Nov. 8, 1988.

Sorenson, Moore, Evens & Burke by George R. Sorenson and Andrew F. Marshall, and John S. Schaper, Phoenix, for plaintiff/appellant.

Robert Stephan, Jr., Phoenix, for defendants/appellees Jenkins.

Ryley, Carlock & Applewhite by Paul M.B. de Blank, Phoenix, for defendants/appellees Van Nguyen.

HATHAWAY, Judge.

Scottsdale Insurance Company (Scottsdale) appeals the granting of a summary judgment affording coverage under a housemover's liability insurance policy issued to Ngoi Van Nguyen, doing business as Interstate Industrial Movers. Scottsdale claims that the automobile exclusion clause of the policy eliminates comprehensive and contractor's liability coverage under the facts of this case because the death of a worker, Roger H. Jenkins (Jenkins), was a claim "arising out of the operation, maintenance or use of a motor vehicle." We agree with the result of the trial court, although for different reasons, and therefore affirm.

On April 1, 1985, Jenkins was electrocuted while employed by Interstate in the transportation of a two-story house in Phoenix, Arizona. At the time of his death, Jenkins was standing on top of the house when the steel guide poles attached to the house came in contact with a 7200–volt power line which spanned the street at the intersection of Oak and Thirty-second streets. The house was in transit at the time of Jenkin's death, and had been jacked up on dollies and placed on steel and wooden beams. The rolling building was being towed by an Interstate tractor. Jenkin's surviving spouse brought a wrongful death action against Van Nguyen and the driver of the tractor.

The comprehensive general liability and contractor's liability insurance provisions of the Scottsdale policy provided coverage of $500,000 and contained the standard automobile exclusion:

This insurance does not apply:

\*      \*      \*      \*      \*      \*

(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading, or unloading of

(1) any automobile or aircraft owned or operated by or rented or loaned to any insured, ...

The record shows that, prior to Nguyen's confession of judgment, he admitted in response to requests for admissions, that the height, length and width of the structure moved was greater than that allowed by the city permit; the structure moved did not have the number of dollies required by the city permit; and appellees did not notify the utility company of the move, as required, nor seek its assistance as may have been prudent. Additionally, appellees used dangerously conductive galvanized guides which were intended to deflect overhead wires but were ineffective without manual assistance. There is further evidence that the instruction and supervision of those assisting in the move were inadequate. Van Nguyen himself directed movement of the house as it passed underneath the overhead power lines. Police and investigative reports before the trial court so indicate. Some of these violations constitute evidence of negligence per se in the operation of the vehicle that was towing the structure, as well as negligence in the preparation of the structure for movement. Thus, the evidence supports a finding of concurrent negligence in both the preparation and movement of the structure.

Scottsdale argues that because the use of the automobile in this case is causally connected with the liability-producing event, the automobile exclusion is applicable to deny coverage. *Brenner v. Aetna Insurance Co.*, 8 Ariz.App. 272, 445 P.2d 474 (1968). However, where concurrent negligence has been established, despite the presence of a causal connection between the negligent use of the automobile and the accident, a policy exclusion "does not preclude coverage when an accident results from the concurrence of a non auto-related cause and an auto-related cause; coverage cannot be defeated simply be-

cause a separate excluded risk constitutes an additional cause of injury." 7A J. Appleman, Insurance Law and Practice § 4500 at 179 (Berdal ed. 1979). Caselaw from other jurisdictions supports this theory.

In *Gonzalez v. St. Paul Mercury Ins. Co.,* 60 Cal.App.3d 675, 131 Cal.Rptr. 626 (1976), the exclusion clause in a homeowner's policy did not bar coverage with respect to liability for an accident occurring when, as a result of the insured's negligence in repairing his automobile brakes on the insured premises, the insured struck and killed the plaintiffs' son while driving the car at a point away from the premises. The insured's liability arose from concurrent causes; he negligently drove the automobile at the time of the accident, and he negligently repaired the brakes five weeks earlier. Concurrent negligence gave rise to overlapping coverage of the homeowner's and automobile liability policies. In *Gonzalez,* the California Court of Appeals relied upon *State Farm Mutual Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973). The *Gonzalez* court reasoned that in *Partridge,* "an accident covered by an automobile policy may nevertheless be covered by a homeowner's policy if concurrent causes of the injury arise from conduct insured by both." *Gonzalez v. St. Paul Mercury Ins. Co.,* 60 Cal.App.3d at 680, 131 Cal.Rptr. at 628.

In *Partridge,* a passenger in a car was injured when the driver's pistol accidentally discharged when the automobile hit a bump that was part of the terrain adjacent to the paved road. The driver had previously filed the trigger mechanism on the gun so that it would discharge more easily. The California Supreme Court found that the homeowner's exclusion clause did not bar coverage because of the presence of concurrent negligence, even where an excluded risk was a cause of the injury. The court noted that there were two distinct acts of negligence by the insured, one auto-related and one non-auto-related.

It is the interpretation of this auto vs. non-auto distinction that provides the split of authority between the California Court of Appeals. The *Gonzalez* court noted that the insurer sought to avoid:

... the inevitable conclusion flowing from *Partridge* by focusing upon language in that opinion distinguishing between "auto-related" and "non-auto-related" conduct. [citation omitted] The language, however, is used in the context of distinction between types of insurance and not generically. The import of the words used is that an accident covered by an automobile policy may nevertheless be covered by a homeowner's policy if concurrent causes of the injury arise from conduct insured by both.

*Gonzalez v. St. Paul Mercury Ins. Co.,* 60 Cal.App.3d at 680, 131 Cal.Rptr. at 629. In *Gonzalez,* if the car had never been driven, no injury would have resulted from the negligent repair of brakes. Similarly, in the instant case, if the house had not been moved, no injury would have resulted from its negligent loading and preparation. We agree with the conclusion of the *Gonzalez* court and apply its reasoning in barring the exclusion clause in the present case. See also *State Farm Fire & Casualty Co. v. Kohl,* 131 Cal.App.3d 1031, 182 Cal.Rptr. 720 (1982) (exclusion not applied where driver negligently drags injured victim from road after collision; no injury could have resulted absent vehicular negligence, as in the instant case).

There is a split of authority on this issue, not only between various jurisdictions, but within the California Court of Appeals itself. In *State Farm Fire and Casualty Co. v. Camara,* 63 Cal.App.3d 48, 133 Cal.Rptr. 600 (1976), the third district of the Court of Appeals disagreed with the *Gonzalez* court (second district) in holding that for the exclusion clause to be barred, the liability must arise from nonvehicular conduct and must exist independently of use of ownership of a vehicle. The *Camara* court cites *Partridge* as authority for this proposition. We disagree that *Partridge* sets forth such an absolute rule.

The *Gonzalez* reasoning is also exemplified in other jurisdictions. In *Pennsylvania General Ins. Co. v. Cegla,* 381 N.W.2d 901 (Minn.App.1986), the Minnesota Court

of Appeals found a similar exclusion clause not applicable where a motorcycle rider was killed as a result of negligent loading of a roll of wire mesh into a truck, which subsequently rolled onto the highway, causing the death of the motorcycle rider following behind the truck. The court found concurrent negligence between the nonvehicular act (negligently loading the mesh) and the vehicular act (driving). *Cegla* is analogous to the instant case. See also *Waseca Mutual Ins. Co. v. Noska*, 331 N.W.2d 917 (Minn.1983); *Frazier v. State Farm Mutual Auto. Ins. Co.*, 347 So.2d 1275 (La.App.1977), cert. den. 351 So.2d 165 (La.1977) (exclusion barred where small child was run over by automobile of insured where insured was also responsible for attending the child and negligently did so); *Cooperative Fire Ins. Co. of Catskill, N.Y. v. Vondrak*, 74 Misc.2d 916, 346 N.Y. S.2d 965 (1973).

In further support of our decision, the general rule is that while coverage clauses are interpreted broadly so as to afford maximum coverage to the insured, exclusionary clauses are interpreted narrowly against the insurer. Adherence to this rule would support coverage by both policies in the instant case. *State Farm Mutual Auto. Ins. Co. v. Partridge*, supra; *Warfe v. Rocky Mountain Fire & Casualty Co.*, 121 Ariz. 262, 589 P.2d 905 (App.1978).

An exception to the exclusion clause is created where concurrent negligence is present, thereby eliminating the mischief of fragmentation of coverage and the avoidance of responsibility by the insurer. This result is particularly equitable where Scottsdale issued a policy to one in the business of moving; to allow Scottsdale to insure one in the business of moving houses and yet except out that precise activity from its coverage boggles the imagination. We do not believe it reasonable to require towing of the rolling house by horses, oxen or people to avoid the exclusion. In light of our decision, we find it unnecessary to address the additional arguments raised by appellant regarding the completed operations and incidental contract provisions.

Appellees are awarded attorney's fees on appeal, upon compliance with Ariz.R.Civ. App.P. 21(c), 17A A.R.S.

Affirmed.

HOWARD, P.J., concurs.

LACAGNINA, Chief Judge, dissenting.

I disagree with the majority opinion and would reverse the judgment of the trial court and remand for entry of judgment in favor of Scottsdale declaring the motor vehicle exclusion clause applicable to the facts of this case to prohibit coverage, and in addition, I find no coverage under the completed operations and incidental contract provisions.

Arizona case law clearly states that if the use of an automobile is only incidental to the event that produced liability, the automobile exclusion clause is not applicable to deny coverage. *American Modern Home Ins. Co. v. Rocha*, 151 Ariz. 595, 729 P.2d 949 (App.1986); *Vanguard Insurance Co. v. Cantrell*, 18 Ariz.App. 486, 503 P.2d 962 (1972); *Brenner v. Aetna Insurance Co.*, 8 Ariz.App. 272, 445 P.2d 474 (App. 1968); 7A J. Appleman, *Insurance Law and Practice* § 4500 at 177 (Berdal ed. 1979).

It is only when the use of a motor vehicle is causally connected with the liability-producing event that coverage is excluded. Causally connected is not to be confused with proximate causation and means only that there be a connection between the accident and the use of the vehicle. *Morari v. Atlantic Mutual Fire Insurance Co.*, 105 Ariz. 537, 539, 468 P.2d 564, 566 (1970).

There is no question in this case that the entire activity undertaken by the parties involved the direct use of a motor vehicle. The conclusion of the majority that the doctrine of concurrent negligence provides coverage misinterprets the nature of the so-called "non-auto related cause." The non-auto related negligence must *exist independently* of the auto-related negligence before the doctrine of concurrent negli-

gence can be applied. As stated in Appleman, *supra* at 179–180:

> Where the coverage of a risk is reasonably contemplated by the parties and such risk is independent of the "ownership, maintenance, operation, use, loading or unloading" of a motor vehicle within the meaning of an exclusion clause of a homeowner's policy, the risk will be covered under the policy even if the injury also arises out of the ownership, maintenance, etc., of the vehicle; however, *the liability must arise from nonvehicular conduct and must exist independently of the use or ownership of a vehicle.* [Emphasis added].

The negligence which occurred in this case by moving an oversized house, loaded in a negligent manner in violation of the permit given for moving the house by use of a motor vehicle on public roads, does not exist independently of the operation, use and loading or unloading of the motor vehicle. As long as the house on the trailer, no matter how loaded, remains off the road, no liability-producing event can occur because no regulations govern this conduct. The requirements for obtaining a permit to move the house and the statutory duty to advise the utility if one is required to be in close proximity to a high voltage line are only necessary when one transports the house by use of a motor vehicle. The injury occurred in this case because the structure was being negligently moved by a motor vehicle, and the negligent loading was directly connected to the transportation and not independent of the use of the motor vehicle. The act of filing the trigger on a gun, as in *State Farm Mutual Auto Ins. Co. v. Partridge* cited by the majority, is not related in any way to the use of a motor vehicle and exists independently of the careless operation of a motor vehicle. In this case, there is no negligence existing independently of the use of the motor vehicle, including the movement under the high voltage wire which caused Jenkins' injury. In summary, every act which occurred in this case leading to Jenkins' injury was directly connected with the movement of the house by use of a motor vehicle, an event excluded by the policy.

I would reverse the trial court finding that coverage was also provided by the completed operations and incidental contract provisions. The court found coverage under the completed operations and incidental contract provisions "since they provide no use of automobile exclusion and do not provide any other applicable exclusions so as to preclude coverage." I disagree. There is no evidence that the event in question was a "completed operations hazard," within the policy definition:

> **"completed operations hazard"** includes **bodily injury and property damage** arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the **bodily injury** or **property damage** occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the **named insured.** "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
>
> (1) when all operations to be performed by or on behalf of the **named insured** under the contract have been completed,
>
> (2) when all operations to be performed by or on behalf of the **named insured** at the site of the operations have been completed, or
>
> (3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

This coverage is applicable only for claims arising after a particular job is completed and has no application to the facts of this case.

Regarding Jenkins' claim that the event in question was a "incidental contract" within the policy definition, we agree. The policy defined incidental contract as follows:

"incidental contract" means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement;

In addition, the broad form endorsement provided as follows:

I. CONTRACTUAL LIABILITY COVERAGE

(A) The definition of incidental contract is extended to include any contract or agreement relating to the conduct of the named insured's business.

I agree that under the policy definition as extended by the broad form endorsement, this contract between the owner of the structure and Interstate was an agreement relating to the conduct of the insured's business. I do not agree that Jenkins' is provided coverage as a result of this contract. Under the comprehensive general liability coverage, there was an exclusion for "liability assumed by the insured under any contract except an incidental contract." There is no indication from the terms of the contract between the owner of the structure and Interstate that Interstate assumed any liability for the accident which occurred in this case. No claim was ever made against Interstate as a result of the accident claiming Interstate had assumed some liability under this contract. Therefore, the policy provides no coverage under the facts of this case under the "incidental contract" provision.